# STATE OF MICHIGAN

# COURT OF APPEALS

SPECTRUM HEALTH HOSPITALS,

      Plaintiff-Appellant,

v

FARMERS INSURANCE EXCHANGE,

      Defendant-Appellee.

UNPUBLISHED
February 21, 2017

No. 329907
Kent Circuit Court
LC No. 15-000926-AV

Before: MURPHY, P.J., and SAWYER and SWARTZLE, JJ.

PER CURIAM.

Plaintiff, Spectrum Health Hospitals, appeals by leave granted the circuit court's reversal of the district court's denial of defendant Farmers Insurance Exchange's motion for a directed verdict. We affirm.

Tamra Wheeler was involved in a motor-vehicle accident in 1989 that caused various injuries to her lower extremities. Defendant stipulated that it was the insurer responsible for Wheeler's personal injury protection (PIP) benefits under the no-fault insurance act, MCL 500.3101 *et seq.*, for expenses arising from the 1989 accident. Over the years, Wheeler underwent numerous surgeries and various medical treatments related to the injuries she suffered in the accident. Defendant paid the expenses related to those treatments. She was prescribed devices such as a wheelchair and a modified van. However, evidence shows that she was able to walk unaided for short distances. Dr. John Maskill testified at deposition that he was an orthopedic surgeon and that he began treating Wheeler in 2010. He testified that the injuries she suffered in the 1989 accident rendered her left leg "like a post[,]" and that a fusion in her left ankle caused her legs to have differing lengths. This made her unstable and caused her to have difficulty walking on uneven surfaces. Dr. Maskill further testified that Wheeler took high levels of prescription pain medication due to her condition, and that she often appeared impaired because of the medication.

On April 5, 2013, Wheeler took her wheelchair outside to talk to her husband. She got out of her wheelchair, slipped on ice, and fractured her right ankle. Dr. Maskill concluded that Wheeler needed surgery as a result of the fracture, and he performed the surgery on April 16,

2013.[1] Plaintiff submitted bills and medical records related to the April 16, 2013 surgery to defendant. Plaintiff and defendant stipulated that plaintiff incurred charges of $17,300.57 by treating Wheeler in April 2013, and that these charges were reasonable and customary. However, defendant refused to pay the expenses based on the fact that Wheeler's April 2013 fracture was caused by the intervening event of her slipping on ice and, therefore, the 2013 fracture did not arise from the 1989 accident.

Plaintiff sued defendant in district court in December 2013, alleging that defendant was liable for the expenses incurred in treating Wheeler for her April 2013 injury as well as for attorney fees under the no-fault insurance act. Dr. Maskill testified at deposition on November 13, 2014, that Wheeler fell on April 5, 2013, for the following three reasons: (1) she was taking pain medication; (2) her left leg "has no ability to compensate"; and (3) the disparity in the lengths of her legs were a "recipe for disaster." He testified that Wheeler's medical treatment for her injuries suffered from the fall "was related, 100 percent" to the 1989 accident. However, on cross-examination Dr. Maskill testified that he did not witness Wheeler's April 2013 fall. He did not know how much ice was in the area where she fell, and he did not know whether the area was flat. At the beginning of the November 17, 2014 jury trial, defendant moved the district court to exclude Dr. Maskill's deposition testimony. The district court denied defendant's motion, and a video of the deposition was played for the jury. After plaintiff rested, defendant moved the district court for a directed verdict, arguing that Dr. Maskill's testimony regarding the cause of Wheeler's April 2013 fall was based on mere speculation, and that plaintiff failed to show a causal connection between the 1989 accident and Wheeler's April 2013 injury. The district court denied defendant's motion. The jury found that Wheeler's April 5, 2013 accidental bodily injuries arose out of the ownership, operation, maintenance, or use of a motor vehicle, that allowable expenses were incurred on Wheeler's behalf arising out of her April 2013 injuries, and that payment for those expenses to which plaintiff was entitled was overdue. On December 5, 2014, the district court entered an order stating the jury's findings and ordering defendant to pay plaintiff medical charges and penalty interest totaling $20,303.76. The order stated that "[t]his Order does not resolve the last pending claim and does not close this case." Plaintiff moved the district court for entry of judgment on December 10, 2014, and on January 13, 2015, the district court entered a judgment of $20,303.76 for the medical charges plus penalty interest, costs of $1,670, and attorney fees of $35,027.

On January 30, 2015, defendant appealed to the circuit court, arguing that the circuit court should reverse the district court's denial of defendant's motion for a directed verdict and defendant's motion to exclude Dr. Maskill's testimony from evidence at trial. The circuit court held that plaintiff failed to present evidence to support a finding that Wheeler's April 2013 injury arose from the 1989 accident. The circuit court reversed the district court's denial of defendant's motion for a directed verdict, and declined to address the issue whether Dr. Maskill's testimony was admissible. Plaintiff moved the circuit court for reconsideration, arguing that because defendant appealed from the district court's January 13, 2015 order rather than the December 5, 2014 order, defendant's appeal to the circuit court was not timely and, therefore, the circuit court

---

[1] Evidence indicates that Dr. Maskill was employed by plaintiff at the time of the surgery.

lacked jurisdiction over it. The circuit court concluded that the December 5, 2014 order was not a final judgment because it was not intended to resolve all of plaintiff's claims. Rather, the December 5, 2014 order was merely a reflection of the jury's verdict, and the January 13, 2015 order was the first order to dispose of the claims and adjudicate the rights of the parties. The circuit court further stated that plaintiff's award of attorney fees was erroneous because defendant was not liable to plaintiff for PIP benefits. Plaintiff applied to this Court for leave to appeal the circuit court's reversal of the district court's denial of defendant's motion for a directed verdict, and this Court granted plaintiff's application.

Plaintiff argues that the circuit court lacked subject-matter jurisdiction over defendant's appeal because the appeal was untimely. "[A] party may challenge the subject-matter jurisdiction of a court at any time[,]" *McFerren v B & B Investment Group*, 233 Mich App 505, 512; 592 NW2d 782 (1999), and we review the issue de novo, *Clohset v No Name Corp (On Remand)*, 302 Mich App 550, 559; 840 NW2d 375 (2013).

"The circuit court has jurisdiction of an appeal of right filed by an aggrieved party from . . . a final judgment or final order of a district or municipal court . . . ." MCR 7.103(A)(1). "The time limit for an appeal of right is jurisdictional." MCR 7.104(A); see also *Schlega v Detroit Bd of Zoning Appeals*, 147 Mich App 79, 82; 382 NW2d 737 (1985). "An appeal of right to the circuit court must be taken within . . . 21 days or the time allowed by statute after entry of the judgment, order, or decision appealed . . . ." MCR 7.104(A)(1). For purposes of MCR 7.103(A)(1), a final judgment is defined in MCR 7.202(6). MCR 7.102(8). MCR 7.202(6)(a)(i) states that in a civil case, a final judgment or a final order is "the first judgment or order that disposes of all the claims and adjudicates the rights and liabilities of all the parties, including such an order entered after reversal of an earlier final judgment or order . . . ."

Count one of plaintiff's complaint alleged that defendant was obligated to pay plaintiff the medical charges resulting from treating Wheeler's injuries from the April 5, 2013 fall, and that defendant was obligated to pay plaintiff penalty interest and attorney fees under the no-fault insurance act. The district court's December 5, 2014 order stated that the parties stipulated that plaintiff incurred medical charges of $17,303.57, and that if the jury found that payment of the charges was overdue, then plaintiff was entitled to the charges plus 12% penalty interest of $3,303.19. The order then enumerated the jury's findings. The order stated that based on the parties' stipulations and the jury's verdict, "IT IS ORDERED that Defendant pay Plaintiff its incurred medical charges and 12% penalty interest under MCL 500.3142[2] in the amount of $20,303.76." The order further stated that "[t]his Order does not resolve the last pending claim and does not close the case." On January 13, 2015, the district court entered an order titled "Order and Judgment," ordering defendant to pay plaintiff $20,303.76 for medical charges and penalty interest, $1,670 for costs, and $35,027 for attorney fees. The order stated that "[t]his judgment resolves the last pending claim and closes the case pursuant to MCR 2.602(A)(3)."

---

[2] MCL 500.3142(3) states that overdue PIP payments bear "simple interest at the rate of 12% per annum."

We conclude that the December 5, 2014 order was not "the first judgment or order that dispose[d] of all the claims and adjudicate[d] the rights and liabilities of all the parties . . . ." MCR 7.202(6)(a)(i). Although the December 5, 2014 order explicitly ordered defendant to pay plaintiff $20,303.76 in medical charges and penalty interest, it did not dispose of plaintiff's claim for attorney fees under the no-fault insurance act, which plaintiff explicitly alleged in count one of its complaint. Rather, the district court did not dispose of all of plaintiff's claims until the January 13, 2015 order, when it rendered judgment with regard to plaintiff's claims for medical charges, costs, and attorney fees. The issue of attorney fees under the no-fault insurance act was part of plaintiff's claim from the beginning of the case, and the December 5, 2014 order explicitly stated that it was not a final order disposing of all issues. Cf. *Baitinger v Brisson*, 230 Mich App 112, 115-116; 583 NW2d 481 (1998). Plaintiff correctly asserts that the fact that the December 5, 2014 order stated that it was not a final order is not dispositive with regard to whether the order constituted a final order appealable as of right. See, e.g., *Botsford Continuing Care Corp v Intelistaf Healthcare, Inc*, 292 Mich App 51, 61; 807 NW2d 354 (2011). And plaintiff further argues that the December 5, 2014 order and the January 13, 2015 order were two separate final orders, and defendant had to appeal each separately. However, as discussed above, the December 5, 2014 order did not in fact resolve all of the issues, whereas the January 13, 2015 order did resolve all issues. Therefore, we find that the January 13, 2015 order was the only final order from the district court in this case, and because defendant's claim of appeal was submitted on January 30, 2015, which was fewer than 21 days from the order, defendant's claim was timely. MCR 7.104(A)(1); MCR 7.202(6)(a)(i). In addition, because defendant's appeal from the January 13, 2015 order was timely, defendant was able to appeal issues related to the December 5, 2014 order as well. See *Bonner v Chicago Title Ins Co*, 194 Mich App 462, 472; 487 NW2d 807 (1992).

Plaintiff next argues that the circuit court erred in holding that plaintiff failed to present evidence that Wheeler's April 2013 injury arose from the 1989 accident and in reversing the district court's denial of defendant's motion for a directed verdict. We review a trial court's decision on a directed verdict de novo. *Aroma Wines & Equip, Inc v Columbian Distribution Servs, Inc*, 497 Mich 337, 345; 871 NW2d 337 (2015). "A party is entitled to a directed verdict if the evidence, when viewed in the light most favorable to the nonmoving party, fails to establish a claim as a matter of law." *Id.* This Court reviews a circuit court's decision on an appeal from a district court's decision de novo. *First of America Bank v Thompson*, 217 Mich App 581, 583; 552 NW2d 516 (1996).

The no-fault insurance act provides that "an insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle, subject to the provisions of" the act. MCL 500.3105(1). " 'It is not *any* bodily injury that triggers an insurer's liability under the no-fault act. Rather, it is only those injuries that are caused by the insured's use of a motor vehicle.' " *McPherson v McPherson*, 493 Mich 294, 297; 831 NW2d 219 (2013), quoting *Griffith v State Farm Mut Auto Ins Co*, 472 Mich 521, 531; 697 NW2d 895 (2005). "Regarding the degree of causation between the injury and the use of the motor vehicle that must be shown, this Court has established that an injury arises out of the use of a motor vehicle as a motor vehicle when 'the causal connection between the injury and the use of a motor vehicle as a motor vehicle is more than incidental, fortuitous, or "but for." ' "

-4-

*McPherson*, 493 Mich at 297, quoting *Thornton v Allstate Ins Co*, 425 Mich 643, 659; 391 NW2d 320 (1986).

Our Supreme Court analyzed this "arising out of" standard in MCL 500.3105(1) in *McPherson*. In that case, the plaintiff suffered injuries in a 2007 motor vehicle accident that rendered him prone to seizures. *Id.* at 295. In 2008, while operating a motorcycle, he had a seizure that caused him to lose control of the motorcycle and collide with a parked automobile, breaking his spinal cord and leaving him paralyzed. *Id.* The plaintiff claimed PIP benefits, arguing "that he was entitled to no-fault benefits for the spinal cord injury as a result of the *2007* accident" rather than for the 2008 accident, "asserting that the spinal cord injury 'ar[ose] out of' the 2007 accident for purposes of MCL 500.3105(1)." *Id.* at 295-296, 295 n 1. The trial court denied the defendant insurance company's motion for partial summary disposition, and this Court affirmed. *Id.* at 296. However, our Supreme Court concluded that

> the causal connection between the 2008 spinal cord injury and the 2007 accident is insufficient to satisfy the 'arising out of' requirement of MCL 500.3105(1). Plaintiff did not injure his spinal cord while using the vehicle in 2007. Rather, he injured it in the 2008 motorcycle crash, which was caused by his seizure, which was caused by his neurological disorder, which was caused by his use of a motor vehicle as a motor vehicle in 2007. Under these circumstances, we believe that the 2008 injury is simply too remote and too attenuated from the earlier use of a motor vehicle to permit a finding that the causal connection between the 2008 injury and the 2007 accident "is more than incidental, fortuitous, or 'but for.' " [*Id.* at 297-298, quoting *Thornton*, 425 Mich at 659.]

In other words, "[t]he facts alleged by plaintiff are insufficient to support a finding that the first injury caused the second injury in any direct way. Rather, the facts alleged by plaintiff only support a finding that the first injury directly caused the second accident, which in turn caused the second injury." *McPherson*, 493 Mich at 298-299.

In this case, Dr. Maskill's testimony shows that Wheeler's ankle fracture on April 5, 2013, was caused by her fall, which was caused by her instability when walking, which was caused by the injuries she suffered from the 1989 accident. However, even when viewing the evidence "in the light most favorable to the nonmoving party," *Aroma Wines & Equip, Inc*, 497 Mich at 345, i.e., plaintiff, we conclude that the "causal connection" between Wheeler's 1989 injury and the April 2013 fall "is insufficient to satisfy the 'arising out of' requirement of MCL 500.3105(1)." *McPherson*, 493 Mich at 297. Wheeler fractured her ankle in 2013 because she fell on ice, which evidence shows was caused at least in part by her inability to compensate when walking on ice, which was caused by the damage to her lower extremities, which was caused by the 1989 accident. In other words, "the facts alleged by plaintiff only support a finding that the [1989] *injury* directly caused the [April 2013] *accident*, which in turn caused the second injury." *McPherson*, 493 Mich at 298-299. Therefore, "the second injury alleged by plaintiff is too attenuated from the first accident to permit a finding that the second injury was directly caused by the first accident." *Id.* at 299. For this reason, the district court erred in denying defendant's motion for a directed verdict, and the circuit court properly reversed the district court's denial. See *id.*

Plaintiff relies on *Scott v State Farm Mut Auto Ins Co*, 278 Mich App 578; 751 NW2d 51 (2008), vacated in part by 482 Mich 1074 (2008), to support its argument that the evidence supported a finding that Wheeler's 2013 injury arose from the 1989 accident. In *Scott*, the defendant insurance company refused to pay PIP benefits for medication that the plaintiff alleged was necessitated by high cholesterol that she suffered as a result of a motor-vehicle accident. *Id.* at 579-581. As our Supreme Court stated in *McPherson*, the issue in *Scott* "was whether the evidence was sufficient to support a finding that the first *injury* caused the second *injury* in a direct way." *McPherson*, 493 Mich at 298. In contrast, the plaintiff in *McPherson* claimed that his 2008 injury "occurred as a result of the neurological disorder from the first accident in combination with the intervening motorcycle accident." *Id.* As discussed above, that causal connection could not support a finding that the plaintiff's 2008 injury arose from the 2007 accident. *Id.* at 298-299. Likewise, Wheeler's April 2013 injury resulted from the "intervening [slip and fall] accident" rather than being a direct result of the 1989 accident. Therefore, *Scott* is distinguishable from this case and does not support plaintiff's argument. *Id.*

Plaintiff also argues that Wheeler's April 2013 injury arose from the 1989 accident not because the April 2013 injury was caused by the 1989 accident, but because the 1989 accident rendered her unable to compensate when she fell in April 2013, which caused her injuries from the April 2013 fall to be more severe than they otherwise would have been. We fail to see the relevance of this argument. As discussed above, defendant is only liable for PIP benefits resulting from the 2013 injury if the injury arose from the 1989 accident. MCL 500.3105(1). And for the reasons discussed above, under the standard set forth by our Supreme Court in *McPherson*, 493 Mich at 297-299, the evidence cannot support a finding that Wheeler's April 2013 fracture arose from the 1989 accident.

Plaintiff argues that the circuit court erred in reversing the district court's award of attorney fees. We review a trial court's decision on whether to award attorney fees for an abuse of discretion. *Brown v Home-Owners Ins Co*, 298 Mich App 678, 689-690; 828 NW2d 400 (2012). PIP benefits "are overdue if not paid within 30 days after an insurer receives reasonable proof of the fact and of the amount of loss sustained." MCL 500.3142(2). The no-fault insurance act further states that

> [a]n attorney is entitled to a reasonable fee for advising and representing a claimant in an action for personal or property protection insurance benefits which are overdue. The attorney's fee shall be a charge against the insurer in addition to the benefits recovered, if the court finds that the insurer unreasonably refused to pay the claim or unreasonably delayed in making proper payment. [MCL 500.3148(1).]

However, "if an insurer does not owe benefits, then benefits cannot be overdue." *Moore v Secura Ins*, 482 Mich 507, 526; 759 NW2d 833 (2008). Put differently, it is impossible for an insurer to unreasonably refuse to pay benefits if the insurer is later deemed to not be liable for the benefits. *Id.*

As discussed above, the circuit court properly reversed the district court's denial of defendant's motion for a directed verdict because plaintiff failed to prove that Wheeler's April 2013 injury arose out of the 1989 accident. Because plaintiff failed to prove that Wheeler's

April 2013 injury arose out of the 1989 accident, defendant was not liable to pay PIP benefits for expenses resulting from the April 2013 injury. MCL 500.3105(1). Because defendant did not owe PIP benefits, the benefits were not overdue. *Moore*, 482 Mich at 526. Therefore, defendant was not obligated to pay defendant attorney fees under MCL 500.3148(1), and the district court abused its discretion in holding otherwise. *Moore*, 482 Mich at 517; *Brown*, 298 Mich App at 690.

In addition, plaintiff urges this Court to address the admissibility of Dr. Maskill's testimony. However, this issue is moot because the district court admitted the testimony and the circuit court did not address the issue, and we decline the invitation to address it. See *City of Warren v Detroit*, 261 Mich App 165, 166 n 1; 680 NW2d 57 (2004).

Affirmed.

/s/ William B. Murphy
/s/ David H. Sawyer
/s/ Brock A. Swartzle