*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JAMES MARSHALL,

        Plaintiff-Appellant,

v

USAA CASUALTY INSURANCE COMPANY,

        Defendant,

and

KURT VANKOUGHNET, THE HERTZ CORPORATION, and HERTZ CAR RENTAL,

        Defendants-Appellees.

UNPUBLISHED
September 30, 2025
1:19 PM

No. 371351
Wayne Circuit Court
LC No. 23-002561-NI

Before: LETICA, P.J., and RICK and BAZZI, JJ.

PER CURIAM.

In this action arising from an automobile accident, plaintiff appeals as of right the trial court's orders granting summary disposition in favor of defendants, Kurt Vankoughnet, the Hertz Corporation, and Hertz Car Rental. We affirm the order granting summary disposition in favor of Vankoughnet, vacate the order granting summary disposition in favor of the Hertz defendants, and remand for proceedings consistent with this opinion.

## I. FACTUAL AND PROCEDURAL HISTORY

Plaintiff was injured in an automobile accident in 2016. He also previously served in the military and was honorably discharged. He received treatment for neck and back pain in 2016. On February 27, 2020, plaintiff was injured in an auto accident when he turned and another vehicle struck his vehicle's right front passenger side. Just days later, on March 3, 2020, plaintiff claimed that he was struck by a rental vehicle driven by Vankoughnet. Although plaintiff treated with multiple providers, including doctors from veteran's services and physical therapists, and

participated in testing, such as magnetic resonance imaging, the medical records did not reflect that plaintiff sustained an aggravation of his preexisting medical conditions arising from the March 3, 2020 accident. This litigation arises from the automobile accident that occurred on March 3, 2020.

Plaintiff filed suit against Vankoughnet alleging negligence. Vankoughnet moved for summary disposition under MCR 2.116(C)(10), asserting that plaintiff could not demonstrate a serious impairment of an important body function, specifically the aggravation of a preexisting medical condition. In opposition to the motion, plaintiff presented his extensive medical treatment records and argued that the issue presented a factual question for the jury. At the hearing on the motion, the trial court asked plaintiff to specifically identify the pages of the medical records that listed the aggravation of a medical condition caused by the March 3, 2020 accident. The trial court concluded that the three pages offered by plaintiff failed to support the issue and granted the motion.

In the same complaint, plaintiff filed suit against the Hertz defendants asserting owner's liability under MCL 257.401. The Hertz defendants moved for summary disposition under MCR 2.116(C)(4), (8), and (10), alleging that Michigan's owner's liability was federally preempted and that $20,000 in insurance benefits was secondary to Vankoughnet's insurance benefits. Plaintiff opposed the motion, contending that federal preemption could not occur in light of Michigan's financial responsibility provisions. The trial court disagreed, found that there was federal preemption, and granted the Hertz defendants' motion. From these rulings, plaintiff appeals.

## II. PRESERVATION AND STANDARD OF REVIEW

"In civil cases, Michigan follows the 'raise or waive' rule of appellate review." *Tolas Oil & Gas Exploration Co v Bach Servs & Mfg, LLC*, 347 Mich App 280, 289; 14 NW3d 472 (2023) (quotation marks and citation omitted). To preserve an issue for appellate review, the party claiming error must show that the issue was raised in the trial court. *Id*. If a litigant failed to raise an issue in the trial court, there is no requirement that the Court of Appeals examine the issue. *Id*. Further, the challenge to the error raised in the trial court must be the same error claimed on appeal. *Id*. The application of the Graves Amendment was raised and addressed in the trial court. It is preserved for appellate review. The serious impairment issue is also preserved.

A trial court's decision on a motion for summary disposition is reviewed de novo. *Girimonte v Liberty Mut Ins Co*, 348 Mich App 768, 773; 19 NW3d 921 (2023). A motion for summary disposition premised on MCR 2.116(C)(10) tests the factual sufficiency of the complaint. *Id*. The moving party must identify and support the issues to which the moving party believes there is no genuine issue of material fact, and the affidavits, pleadings, depositions, admissions, and other documentary evidence submitted with the motion must be examined. *Pittsfield Charter Twp v Washtenaw Co Treasurer*, 338 Mich App 440, 449; 980 NW2d 119 (2021). Once the moving party makes and supports its motion, the opposing party may not rest on mere allegations or denials in the pleadings, but must submit documentary evidence setting forth specific facts to demonstrate a genuine issue for trial. *Id*.

Constitutional questions are reviewed de novo. *Makowski v Governor*, 317 Mich App 434, 441; 894 NW2d 753 (2016). Whether the trial court properly interpreted and applied the pertinent statutes is also reviewed de novo. *Id.* This Court "will not unnecessarily decide constitutional issues." *Armijo v Bronson Methodist Hosp*, 345 Mich App 254, 264; 4 NW3d 789 (2023) (quotation marks and citation omitted). "[I]t is an undisputed principle of judicial review that questions of constitutionality should not be decided if the case may be disposed of on other grounds." *Id.*

## III. THE GRAVES AMENDMENT

Plaintiff contends that the trial court erred in granting summary disposition in favor of the Hertz defendants. We vacate the decision and remand for proceedings consistent with this opinion.

The rules of statutory construction are:

> "A decision on a motion for summary disposition and the interpretation of a statute are reviewed de novo." *ADR Consultants, LLC v Mich Land Bank Fast Track Auth*, 327 Mich App 66, 74; 932 NW2d 226 (2019). Issues involving statutory interpretation present questions of law that are reviewed de novo. *Meisner Law Group, PC v Weston Downs Condo Ass'n*, 321 Mich App 702, 714; 909 NW2d 890 (2017). "The primary goal of statutory interpretation is to give effect to the intent of the Legislature." *Briggs Tax Serv, LLC v Detroit Pub Sch*, 485 Mich 69, 76; 780 NW2d 753 (2010). The most reliable evidence of legislative intent is the plain language of the statute. *South Dearborn Environmental Improvement Ass'n, Inc v Dep't of Environmental Quality*, 502 Mich 349, 360-361; 917 NW2d 603 (2018). If the language of the statute is clear and unambiguous, it is presumed that the Legislature intended the meaning plainly expressed in the statute. *Gardner v Dep't of Treasury*, 498 Mich 1, 6; 869 NW2d 199 (2015). The court's interpretation of a statute must give effect to every word, phrase, and clause. *South Dearborn*, 502 Mich at 361. Further, an interpretation that would render any part of the statute surplusage or nugatory must be avoided. *Id.* Common words and phrases are given their plain meaning as determined by the context in which the words are used, and a dictionary may be consulted to ascertain the meaning of an undefined word or phrase. *Id.* "In construing a legislative enactment we are not at liberty to choose a construction that implements any rational purpose but, rather, must choose the construction which implements the legislative purpose perceived from the language and the context in which it is used." *Frost-Pack Distrib Co v Grand Rapids*, 399 Mich 664, 683; 252 NW2d 747 (1977). [*Le Gassick v Univ of Mich Regents*, 330 Mich App 487, 495-496; 948 NW2d 452 (2019).]

Under the federal Supremacy Clause, US Const, art VI, cl 2, a state law must yield to the supreme law "whether expressed in the Constitution of the United States or in any of its laws or treaties" when the two conflict. *Henry v Laborers' Local 1191*, 495 Mich 260, 274-275; 848 NW2d 130 (2014). "[F]ederal law conflicts with state law where it is impossible for a private party to comply with both state and federal requirements or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* at 275 n 32 (quotation marks and citation omitted).

-3-

In *Packowski v United Food & Commercial Workers Local 951*, 289 Mich App 132, 139-140; 796 NW2d 94 (2010), this Court discussed federal preemption:

> Whether a federal statute preempts a state-law claim is a question of federal law. When such questions of federal law are involved, we are bound to follow the prevailing opinions of the United States Supreme Court. If a state-law proceeding is preempted by federal law, the state court lacks subject-matter jurisdiction to hear the state-law cause of action.
>
> "Preemption occurs when a state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." Preemption can also occur when a state or local regulation prevents a private entity from performing a function that Congress has tasked it with performing.
>
> There are three types of federal preemption: express preemption, conflict preemption, and field preemption. Express preemption occurs when a federal statute clearly states an intent to preempt state law or that intent is implied in a federal law's purpose and structure. Under conflict preemption, a federal law preempts state law to the extent that the state law directly conflicts with federal law or with the purposes and objectives of Congress. Field preemption acts to preempt state law when federal law so thoroughly occupies a legislative field that it is reasonable to infer that Congress did not intend for states to supplement it. [Citations omitted.]

In moving for summary disposition in the trial court, the Hertz defendants did not identify the types of federal preemption and the type applicable to the present case.

The Graves Amendment, 49 USC 30106, addresses rented or leased motor vehicle safety and responsibility, stating:

> (a) In General. An owner of a motor vehicle that rents or leases the vehicle to a person (or an affiliate of the owner) shall not be liable under the law of any State or political subdivision thereof, by reason of being the owner of the vehicle (or an affiliate of the owner), for harm to persons or property that results or arises out of the use, operation, or possession of the vehicle during the period of the rental or lease, if
>
> (1) the owner (or an affiliate of the owner) is engaged in the trade or business of renting or leasing motor vehicles; and
>
> (2) there is no negligence or criminal wrongdoing on the part of the owner (or an affiliate of the owner).
>
> (b) Financial Responsibility Laws. Nothing in this section supersedes the law of any State or political subdivision thereof-

(1) imposing financial responsibility or insurance standards on the owner of a motor vehicle for the privilege of registering and operating a motor vehicle; or

(2) imposing liability on business entities engaged in the trade or business of renting or leasing motor vehicles for failure to meet the financial responsibility or liability insurance requirements under State law.

Pertinent to this case, the term owner is defined as "a lessor, lessee, or a bailee of a motor vehicle, in the trade or business of renting or leasing motor vehicles, having the use or possession thereof, under a lease, bailment, or otherwise." 49 USC 30106(d)(2)(C). The Graves Amendment applies to any action commenced on or after the date of this section's enactment, August 10, 2005. 49 USC 30106(c).

Under the motor vehicle code, MCL 257.45 defines "Proof of financial responsibility" as:

proof of ability to respond in damages for liability, on account of accidents occurring subsequent to the effective date of the proof, arising out of the ownership, maintenance, or use of a motor vehicle, in the amount of $20,000.00 because of bodily injury to or death of 1 person in any one accident, and, subject to said limit for 1 person, in the amount of $40,000.00 because of bodily injury to or death or 2 or more persons in any one accident, and in the amount of $10,000.00 because of injury to or destruction of property of others in any one accident.

It should be noted that plaintiff's claim against the Hertz defendants for owner liability was premised on MCL 257.401, that reads in pertinent part:

(1) . . . The owner of a motor vehicle is liable for an injury caused by the negligent operation of the motor vehicle whether the negligence consists of a violation of a statute of this state or the ordinary care standard required by common law. The owner is not liable unless the motor vehicle is being driven with his or her express or implied consent or knowledge. . . .

(2) A person engaged in the business of leasing motor vehicles who is the lessor of a motor vehicle under a lease providing for the use of the motor vehicle by the lessee for a period that is greater than 30 days, or a dealer acting as agent for that lessor, is not liable at common law for damages for injuries to either person or property resulting from the operation of the leased motor vehicle, including damages occurring after the expiration of the lease is in the possession of the lessee.

(3) Notwithstanding subsection (1), a person engaged in the business of leasing motor vehicles who is the lessor of a motor vehicle under a lease providing for the use of the motor vehicle by the lessee for a period of 30 days or less is liable for an injury caused by the negligent operation of the leased motor vehicle only if the injury occurred while the leased motor vehicle was being operated by an authorized driver under the lease agreement or by the lessee's . . . immediate family member. Unless the lessor, or his or her agent, was negligent in the leasing of the motor vehicle, the lessor's liability under this subsection is limited to $20,000.00 because

of bodily injury to or death of 1 person in any 1 accident and $40,000.00 because of bodily injury to or death of 2 or more persons in any 1 accident.

(4) A person engaged in the business of leasing motor vehicles as provided under subsection (3) shall notify a lessee that the lessor is liable only up to the maximum amounts provided for in subsection (3), and only if the leased motor vehicle was being operated by the lessee or other authorized driver or by the lessee's . . . immediate family member, and that the lessee may be liable to the lessor up to amounts provided for in subsection (3), and to an injured person for amounts awarded in excess of the maximum amounts provided for in subsection (3).

The motor vehicle code, in MCL 257.24a, defines "leased vehicle" as "a motor vehicle for which a person is granted possession for a contracted period of time and in return for a contracted sum." Thus, it appears that the phrase "leased vehicle" includes rental vehicles.

We conclude that summary disposition was inappropriate premised on federal preemption. First, under the rules governing summary disposition, the moving party must make and support entitlement to summary disposition. That is, the moving party must identify and support the issues to which the moving party believes there is no genuine issue of material fact, and then provide documentary evidence for examination to support the grant of summary disposition. *Pittsfield Charter Twp*, 338 Mich App at 449. If the moving party meets this initial burden then the opposing party may not rest on mere allegations or denials in the pleadings, but must submit documentary evidence setting forth specific facts to demonstrate a genuine issue for trial. *Id*.

In the present case, the Hertz defendants moved for summary disposition premised on the Graves Amendment. They only referred to 49 USC 30106(a), and claimed that owners of rental or lease vehicles are free from liability. But, the Hertz defendants did not discuss the implications of 49 USC 30106(b) addressing financial responsibility laws. And, the Hertz defendants did not identify the types of federal preemption and the applicable type at issue. The Hertz defendants did not provide a copy of the rental agreement, address plaintiff's residency, and discuss where the rental agreement originated.[1] Additionally, rental companies that are self-insured, register vehicles out of state, and limit the time frame that the vehicles are in this state may be entitled to summary disposition. See *Turner v Farmers Ins Exch*, 507 Mich 858 (2021).[2] These issues should have been addressed and discussed by the parties before resorting to a constitutional challenge premised on federal preemption. Accordingly, we vacate the grant of summary disposition in favor of the Hertz defendants and remand for further proceedings.

---

[1] The complaint alleged that Vankoughnet was from Toledo, Ohio.

[2] Although this decision was rendered only in an order, Michigan Supreme Court orders constitute binding precedent when the rationale can be understood. *Woodring v Phoenix Ins Co*, 325 Mich App 108, 115; 923 NW2d 607 (2018).

## IV.  SERIOUS IMPAIRMENT

Plaintiff next asserts that the trial court erred in granting summary disposition of the negligence claim in favor of Vankoughnet.  We disagree.

"A person remains subject to tort liability for noneconomic loss caused by his or her ownership, maintenance, or use of a motor vehicle only if the injured person has suffered death, serious impairment of body function, or permanent serious disfigurement."  MCL 500.3135(1).  "Serious impairment of body function" is defined as "an objectively manifested impairment of an important body function that affects the person's general ability to lead his or her normal life."  MCL 500.3135(5).  The question whether an injured party has suffered a serious impairment presents a question of law for the court if there is no factual dispute surrounding the nature and extent of the person's injuries or any factual dispute is immaterial to determining whether the standard was met.  MCL 500.3135(2)(a); *McCormick v Carrier*, 487 Mich 180, 190-191; 795 NW2d 517 (2010).

The plain and unambiguous language of the statute contains three requirements that are necessary to establish a serious impairment of body function:  "(1) an objectively manifested impairment (2) of an important body function that (3) affects the person's general ability to lead his or her normal life."  *McCormick*, 487 Mich at 194-195.  "Objectively manifested" is "an impairment that is evidenced by actual symptoms or conditions that someone other than the injured person would observe or perceive as impairing a body function."  *Id*. at 196.  The term "impairment" relates to the impact of damage that arises from an injury.  *Id*. at 197.  When addressing impairment, the focus is not on the injuries, but on how the injuries affected a particular body function.  *Id*.  A plaintiff must introduce evidence demonstrating a physical basis for his subjective complaints of pain and suffering, and this showing generally requires medical documentation.  *Id*. at 198.  Important body function refers to a function of significance and will vary depending on the person.  *Id*. at 199.  Therefore, the inquiry regarding an important body function is "an inherently subjective inquiry that must be decided on a case-by-case basis, because what may seem to be trivial body function for most people may be subjectively important to some, depending on the relationship of that functions to the person's life."  *Id*.

"[T]he aggravation or triggering of a preexisting condition can constitute a compensable injury."  *Fisher v Blankenship*, 286 Mich App 54, 63; 777 NW2d 469 (2009).  Despite the existence of a preexisting condition, recovery may be allowed if the trauma caused by the accident triggered symptoms from that condition.  *Wilkinson v Lee*, 463 Mich 388, 395; 617 NW2d 305 (2000).  However, a causal connection between injuries may be too attenuated in light of the passage of time and intervening events.  See e.g., *McPherson v McPherson*, 493 Mich 294, 298-299; 831 NW2d 219 (2013).

At the hearing on the motion for summary disposition, the trial court noted that it examined pages and pages of medical records, but only saw degenerative changes.  The trial court asked plaintiff's counsel to identify, in the record, documentation of the aggravation of the prior injuries from the March 3, 2020 accident or impairment that became more severe following the accident.  Plaintiff eventually offered three pages of medical records that addressed the trial court's concern, but the trial court determined that an aggravation of injury was not connected to the March 2020 accident.

A review of plaintiff's deposition revealed that he had prior military service and was honorably discharged. In 2016, plaintiff was involved in an auto accident. He treated for neck and back pain through veteran's services. Additionally, on February 27, 2020, plaintiff was injured in an accident when he was turning and was struck by another vehicle on the right front passenger side. Plaintiff called 911 but the at-fault driver drove away. Just days later, on March 3, 2020, plaintiff was involved in this accident with Vankoughnet. Plaintiff filed three lawsuits, each arising from the auto accidents.

During his deposition, plaintiff stated that he was 71 years old. When questioned, plaintiff seemingly had difficulty recalling dates, the extent of his injuries, and any exacerbation of preexisting injuries. When questioning counsel attempted to ascertain the injuries sustained on February 27, 2020 as opposed to those incurred from the March 3, 2020 accident, plaintiff would accuse defendant's counsel of deliberately trying to mix him up. This deposition testimony, consistent with the medical records, did not delineate a connection between the March 3, 2020 accident and the aggravation of neck and back injuries that dated back to 2016. And, when the trial court asked plaintiff's counsel to identify in the medical records the aggravation of preexisting injuries arising from the March 3, 2020 accident, the trial court reviewed those three pages and found no correlation. A party may not leave it to this Court to search for the factual basis offered in support of a position, but must correlate factual assertions to the location in the record. *Derderian v Genesys Health Care Sys*, 263 Mich App 364, 388; 689 NW2d 145 (2004). Additionally, when an appellant fails to challenge the basis of the ruling by the trial court, we need not even consider granting the relief request. *Id*. at 381.

Because plaintiff failed to identify in the medical records a correlation of aggravation of existing conditions to the March 3, 2020 accident, plaintiff is not entitled to appellate relief. Although plaintiff contends that this issue presents a question of fact, MCL 500.3135 states that the issue of whether "the injured person has suffered serious impairment of body function" is a question of law if there is no factual dispute or no material factual dispute concerning the nature and extent of the plaintiff's injuries. MCL 500.3135(2)(a). Accordingly, the trial court did not err in granting Vankoughnet's motion for summary disposition under MCR 2.116(C)(10).

Affirmed in part, vacated in part, and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Anica Letica
/s/ Michelle M. Rick
/s/ Mariam S. Bazzi

-8-