*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

WOLVERINE MUTUAL INSURANCE
COMPANY,

UNPUBLISHED
September 29, 2022

Plaintiff/Counterdefendant-Appellee,

v

No. 356675
Ingham Circuit Court
LC No. 20-000461-NF

JEFFREY KEMPER,

Defendant/Counterplaintiff-Appellant.

Before: SAWYER, P.J., and LETICA and PATEL, JJ.

PER CURIAM.

In this no-fault action, defendant, Jeffrey Kemper, appeals by right the circuit court's order granting summary disposition under MCR 2.116(C)(10) in favor of plaintiff, Wolverine Mutual Insurance Company, in its action for declaratory judgment. The trial court concluded that defendant is not entitled to additional personal injury protection (PIP) benefits for injuries sustained when he fell in September 2019, because those injuries did not arise out of the April 1987 motor vehicle accident that rendered him a quadriplegic. We affirm.

## I. BACKGROUND

Jeffrey Kemper was involved in a motor-vehicle accident in 1987 that rendered him a quadriplegic. The parties stipulated that plaintiff insurer was responsible for defendant's personal injury protection (PIP) benefits under the no-fault insurance act, MCL 500.3101 *et seq.*, for expenses arising from the 1987 accident. Since 1987, defendant has been wheelchair-bound because of his quadriplegia and is entirely dependent on his wheelchair for mobility. However, defendant is able to drive himself utilizing a motor vehicle that has been modified with hand controls and a steering knob. Further, defendant is able to transfer himself from one seated position to another by utilizing a transfer board.

On September 25, 2019, defendant attempted to transfer himself from the driver's seat of his vehicle to his wheelchair utilizing the transfer board. However, the board fell, causing him to fall approximately six to nine inches from the doorjamb of the vehicle and land on his buttocks. Defendant waited approximately 15 to 30 minutes before two individuals passing by came to his

-1-

assistance. Because skin breakdown is a known concern for an individual with quadriplegia, defendant's caregiver checked him for wounds and bruises. Despite their diligence in monitoring the area, defendant developed a hematoma that eventually became a stage-three pressure ulcer. The pressure ulcer required medical treatment and multiple physician visits. Defendant ultimately required 24-hour attendant care services. As a result of his injuries, defendant submitted claims to plaintiff for payment of his medical expenses for treatment of the pressure wound and for his increased level of attendant care resulting from the ulcer.

Plaintiff filed a complaint seeking a declaratory judgment on the issue of whether defendant is entitled to PIP benefits for expenses resulting from the September 25, 2019 incident. The parties filed a stipulation of facts and cross-motions for summary disposition. Plaintiff moved for summary disposition under MCR 2.116(C)(10) on the ground that the stage-three pressure ulcer and the resulting treatment did not "arise out of" the use of defendant's motor vehicle and, therefore, was not covered under MCL 500.3105(1). Plaintiff argued that under *McPherson v McPherson*, 493 Mich 294; 831 NW2d 219 (2013), the stage-three pressure ulcer constituted a new injury that arose as a result of an intervening act, and not the 1987 accident. The trial court agreed and granted plaintiff's motion.

## II. ANALYSIS

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Spiek v Dep't of Transp,* 456 Mich 331, 337; 572 NW2d 201 (1998). "Summary disposition is appropriate under MCR 2.116(C)(10) if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Zaher v Miotke*, 300 Mich App 132, 139; 832 NW2d 266 (2013) (quotations marks and citations omitted). "In reviewing a motion under MCR 2.116(C)(10), this Court considers the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial." *Id*. (quotation marks and citations omitted).

Because there is no dispute regarding the material facts, the only question before this Court is whether the stage-three pressure ulcer resulting from defendant's fall arose out of the 1987 accident for purposes of MCL 500.3105(1).

MCL 500.3105(1) provides that "an insurer is liable to pay benefits for accidental bodily injury arising out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle." MCL 500.3105(1). " 'It is not *any* bodily injury that triggers an insurer's liability under the no-fault act. Rather, it is only those injuries that are caused by the insured's use of a motor vehicle.' " *McPherson*, 493 Mich at 297, quoting *Griffith v State Farm Mut Auto Ins Co*, 472 Mich 521, 531; 697 NW2d 895 (2005) (emphasis in original). "Regarding the degree of causation between the injury and the use of the motor vehicle that must be shown, this Court has established that an injury arises out of the use of a motor vehicle as a motor vehicle when the causal connection between the injury and the use of a motor vehicle as a motor vehicle is more than incidental, fortuitous, or 'but for.' " *McPherson*, 493 Mich at 297 (quotation marks and citation omitted).

In *McPherson*, our Supreme Court analyzed the "arising out of" standard set forth under MCL 500.3105(1). *McPherson* involved a plaintiff who sustained a neurological disorder as a result of a 2007 motor vehicle accident. *McPherson*, 493 Mich at 295. In 2008, the plaintiff injured his spinal cord when he crashed his motorcycle after experiencing a seizure consistent with his existing neurological disorder. *Id*. The plaintiff "claimed that he was entitled to no-fault benefits for the spinal cord injury as a result of the *2007* accident, asserting that the spinal cord injury 'ar[ose] out of' the 2007 accident for purposes of MCL 500.3105(1)." *Id*. at 296 (alteration and emphasis in original). The *McPherson* Court addressed whether "the *spinal cord injury* plaintiff suffered in the 2008 crash 'ar[ose] out of' the 2007 accident for purposes of MCL 500.3105(1)." *Id*. (alteration and emphasis in original). The Court concluded that the "causal connection between the 2008 spinal cord injury and the 2007 accident [was] insufficient to satisfy the 'arising out of' requirement of MCL 500.3105(1)." *Id*. at 297-298. In support of its conclusion, the Court reasoned that

> [p]laintiff did not injure his spinal cord while using the vehicle in 2007. Rather, he injured it in the 2008 motorcycle crash, which was caused by his seizure, which was caused by his neurological disorder, which was caused by his use of a motor vehicle as a motor vehicle in 2007. Under these circumstances, we believe that the 2008 injury is simply too remote and too attenuated from the earlier use of a motor vehicle to permit a finding that the causal connection between the 2008 injury and the 2007 accident "is more than incidental, fortuitous, or 'but for.' " [*Id*. (quotation marks and citation omitted).]

Further, the *McPherson* Court rejected the plaintiff's argument that the holding in *Scott v State Farm Mut Auto Ins Co*, 278 Mich App 578; 751 NW2d 51 (2008), vacated in part on other grounds 482 Mich 1074 (2008), applied to his case. *McPherson*, 493 Mich at 298. *Scott* addressed whether the plaintiff's hyperlipidemia occurred as a direct result of an injury sustained in an automobile accident, or was caused by other factors. *Id*. In other words, "the issue was whether the evidence was sufficient to support a finding that the first injury caused the second injury in a direct way." *Id*. In *McPherson*, there was no direct causation between the first and second injuries because "the first *injury* directly caused the second *accident,* which in turn caused the second injury." *Id*. at 298-299 (emphasis in original). Accordingly, the Court determined that the second injury was too attenuated to be directly caused by the first accident. *Id*.

Here, defendant asserts that this case should be decided under *Scott* because his first injury—his quadriplegia—directly caused his second injury—the stage-three pressure ulcer. We disagree. Considered in a light most favorable to defendant, the evidence shows that he suffered an injury in 1987 from using his vehicle as a motor vehicle. However, the injury he now seeks benefits for, the stage-three pressure ulcer, was not a result of the 1987 accident. Rather, similarly to *McPherson*, his stage-three pressure ulcer was the direct result of an intervening incident, which was caused by his quadriplegia. Although defendant was susceptible to falling as a result of quadriplegia, his injury was caused by the fall, not by the 1987 accident. More specifically, the injury was the result of his transfer board falling during the wheelchair-to-vehicle transfer process. Similarly to the intervening car accident in *McPherson*, defendant's fall was a distinct and separate incident from the 1987 accident.

Accordingly, the record reflects that the "first *injury* directly caused the second *accident*, which in turn caused the second injury." *McPherson*, 493 Mich at 298-299. Defendant did not develop a stage-three pressure ulcer from the 1987 accident. Rather, he developed the ulcer during a fall, which was caused by his quadriplegia, which was caused by his use of a motor vehicle in 1987. Our Supreme Court explicitly rejected this type of causation as being too remote and too attenuated from the automobile accident to permit a finding that the causal connection between the accident and the second injury was "more than incidental, fortuitous, or 'but for.' " *Id.* at 298, quoting *Thornton v Allstate Ins Co*, 425 Mich 643, 659; 391 NW2d 320 (1986).

Affirmed.

/s/ David H. Sawyer
/s/ Anica Letica
/s/ Sima G. Patel